FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ERIC ST. GEORGE,

    Petitioner - Appellant,

v.

JASON LENGERICH, Warden of BVCF;
PHILIP J. WEISER,

    Respondents - Appellees.

No. 23-1280
(D.C. No. 1:22-CV-02312-WJM)
(D. Colo.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

_____

Before **MORITZ**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.

_____

Eric St. George seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 petition. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to appeal the denial of a § 2254 petition). We deny a COA and dismiss this matter.

I

A Colorado jury convicted St. George on two counts of attempted second-degree murder, two counts of first-degree assault, three counts of felony menacing, one count of illegal discharge of a firearm, and one count of unlawful sexual contact. The convictions

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

stemmed from an altercation St. George had with an escort and an ensuing gunfight he had with police. He was sentenced to thirty-two years in prison, and the Colorado Court of Appeals (CCA) affirmed his convictions on direct appeal. St. George sought to file an untimely petition for certiorari with the Colorado Supreme Court, but that court denied his request and dismissed his case. St. George then turned to the federal courts for relief.

In his § 2254 petition, St. George asserted four claims, three of which alleged the trial court erred by: 1) failing to suppress statements he made to police in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); 2) failing to appoint substitute counsel; and 3) admitting evidence of guns found in his apartment. His fourth claim alleged prosecutorial misconduct during closing arguments. Each of these claims was rejected by the CCA, and the district court concluded the CCA's decision was not an unreasonable application of federal law and denied him a COA. St. George seeks a COA to challenge the district court's denial of relief.[1]

II

To obtain a COA, a COA applicant "must make a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, as here,

---

[1] In addition to the four claims described above, St. George's COA application includes a separate section entitled, "The Verdict was Based Upon Insufficient Evidence." COA Appl. at 29 (capitalization omitted). The district court declined to review or construe these arguments as a fifth claim because St. George did not raise and exhaust an insufficient-evidence claim in state court, nor did he raise such a claim in his § 2254 petition; he merely argued in a reply and supplement that, presuming his underlying claims established a constitutional violation, there could not have been sufficient evidence to sustain his convictions. Although St. George maintains there was insufficient evidence to support his convictions, he does not contend the district court's refusal to consider the sufficiency of the evidence as a fifth claim is reasonably debatable.

the district court denied the claims on the merits, an applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* We conduct "an overview of the claims . . . and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). In doing so, we account for the deferential treatment afforded to state court decisions by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). AEDPA precludes habeas relief on claims adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller-El*, 537 U.S. at 336.

### A. Claim One—Miranda Waiver

St. George claimed the trial court erred in admitting audio recorded statements he made to police in violation of *Miranda*. *Miranda* held a defendant may waive rights attending a custodial police interrogation so long as the waiver is voluntary, knowing, and intelligent. 384 U.S. at 444. St. George argued he was subjected to a custodial interrogation at the hospital after his gunfight with police, and his *Miranda* waiver was not knowing and intelligent because he was intoxicated by alcohol and pain medication after

3

having been shot.[2]  The CCA rejected this claim, and the district court concluded the CCA's decision was not an unreasonable application of federal law.  We conclude that reasonable jurists would not debate the district court's decision.

As an initial matter, the district court correctly recognized the CCA's recitation of the facts was presumptively correct and St. George did not present clear and convincing evidence to rebut that presumption.  *See* 28 U.S.C. § 2254(e)(1).  According to the CCA, both a police officer and a physician's assistant described St. George as intoxicated, and a toxicology analyst assessed his blood alcohol at the time of the shooting to be .28 to .29, but later, when asked at the hospital if he was sober, St. George told the police he was "fine," R. at 194 (internal quotation marks omitted).  He was oriented to his surroundings and the situation, his speech was not slurred, and he was responsive to questions and remorseful for his actions.  Additionally, after receiving his *Miranda* advisement, he told police he understood his *Miranda* rights and the seriousness of the situation, stating: "I understand that and I will be very plain.  It is 4:00 a.m., and I am lying here in the hospital with two gunshot wounds, so I will not be very verbose, all right."  *Id.* at 195 (internal quotation marks omitted).  Given these facts, the CCA determined he "was aware of the nature of the rights he was waiving" and there was "no indication that St. George

---

[2] St. George disputes the district court's conclusion that he failed to challenge the voluntariness of his waiver.  Although his opening brief to the CCA discussed the legal standards for assessing voluntariness and made the conclusory statement that his waiver was not knowing, intelligent, and voluntary, *see* R. at 99-101, his arguments challenged only the knowing and intelligent elements of his waiver, *id.* at 105.  Consequently, he failed to exhaust the voluntary element of his claim.  *See Milton v. Miller*, 812 F.3d 1252, 1265 (10th Cir. 2016) (recognizing AEDPA requires exhaustion of issues in state court).

was in any way so intoxicated or so medicated that he didn't understand exactly what was being asked of him." *Id.* at 195-96 (internal quotation marks omitted). Thus, considering the totality of circumstances, the CCA concluded his *Miranda* waiver was knowing and intelligent.

The district court ruled it was not an unreasonable application of federal law for the CCA to conclude that the "waiver was 'made with a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them].'" *Id.* at 304-05 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010)). Although St. George contends he could not have understood he was being accused of a crime, he was given a *Miranda* advisement and fails to cite any clear and convincing evidence to rebut the state court's presumptively correct factual findings. Nor does he explain how the CCA's conclusion is an unreasonable application of federal law. He therefore fails to show the district court's decision is reasonably debatable.

### B. Claim Two—Substitute Counsel

St. George also claims his Sixth Amendment rights were violated when the trial court declined to appoint substitute counsel for him. *See Gideon v. Wainwright*, 372 U.S. 335 (1963) (recognizing the Sixth Amendment right to counsel for indigent criminal defendants). Although he had standby counsel, he contends the trial court should have appointed substitute counsel because conflicts with his attorney compelled him to proceed pro se. *See United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) ("To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an

5

apparently unjust verdict." (internal quotation marks omitted)).    The district court concluded the CCA's rejection of this claim was not an unreasonable application of clearly established federal law because there was no actual conflict or breakdown of communication with his attorney.    We conclude the district court's decision is not reasonably debatable.

The district court first ruled the CCA's decision was not based on an unreasonable determination of the facts.    The district court explained that an independent state judge held a hearing on St. George's conflict argument and found he failed to show good cause for substitution of counsel because there was neither a breakdown in communication nor an actual conflict with his attorney.    As the CCA observed, there was not a total breakdown in communication because St. George's attorney consistently maintained communication with him, shared some discovery, and kept him apprised of the status of his case.    Nor was there an actual conflict because St. George merely sought to control the strategy of his case. *See id.* ("Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney[.]").    Although St. George disputes these findings, they are presumptively correct, and he cites no clear and convincing evidence to rebut that presumption.    28 U.S.C. § 2254(e)(1).

As for the district court's legal assessment, the court concluded that under these circumstances, the CCA's decision was not contrary to or an unreasonable application of clearly established federal law.    St. George insists he was entitled to substitute counsel, but the district court correctly recognized that he fails to cite clearly established federal law requiring substitution of counsel when there is no actual conflict.    *See House v. Hatch*,

6

527 F.3d 1010, 1018 (10th Cir. 2008) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."). The district court also recognized that "the Supreme Court has made it clear that the Sixth Amendment does not guarantee a meaningful relationship between an accused and his counsel.'" R. at 310 (quoting *Morris v. Slappy*, 461 U.S. 1, 14 (1983)). Reasonable jurists would not debate the district court's decision.

### C.  Claim Three—Admission of Gun Evidence

At trial, St. George sought to exclude evidence of multiple guns that police found in his apartment after the firefight. He argued some of the guns were not relevant to his offenses and the evidence was unduly prejudicial. The CCA affirmed admission of the evidence on a res gestae theory.[3] In his § 2254 petition, St. George claimed the trial court abused its discretion in admitting the evidence because its probative value was substantially outweighed by the danger of unfair prejudice, denying him a fair trial. The district court denied the claim, ruling there is no Supreme Court case clearly establishing a standard by which to assess the state court's admission of the evidence.

St. George disputes the district court's decision, insisting habeas relief is available if admission of the evidence resulted in a fundamentally unfair trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *Estelle* considered whether a defendant's due process rights were violated by the admission of evidence establishing the child-victim had previously suffered injuries consistent with "battered-child syndrome." *Id.* at 68 (internal

---

[3] Res gestae is "intrinsic evidence inextricably connected to the charged crimes." *United States v. Piette*, 45 F.4th 1142, 1155 (10th Cir. 2022) (internal quotation marks omitted).

quotation marks omitted).  The Court held there was no due process violation because the evidence tended to prove the child's death was not an accident, but rather the result of an intentional act.  *Id.* at 69-70.  St. George does not explain how *Estelle* clearly establishes that admission of the gun evidence here rendered his trial so fundamentally unfair as to violate his due process rights.  In any event, "we may not extract clearly established law from the general legal principles developed in factually distinct contexts."  *Holland v. Allbaugh*, 824 F.3d 1222, 1229 (10th Cir. 2016) (internal quotation marks omitted).  St. George cites no clearly established federal law holding that admission of evidence like the gun evidence here renders a trial fundamentally unfair.  *See House*, 527 F.3d at 1018.  The district court's denial of this claim is not reasonably debatable.

### D.  Claim Four—Prosecutorial Misconduct

During summation, the prosecutor referenced St. George's gunfight with police:

> Two Lakewood police officers gunned down in the line of duty.  How close were we to that headline on the morning of August 1st.  All because of the defendant's unreasonable and dangerous decisions that he made that night.  Decisions that came out of his need to control people, control things, his frustration when he could not, his access to too much alcohol and too many guns.
>
> . . . .
>
> And the only reason that we didn't wake up on August 1st to that narrative of two Lakewood police officers killed in the line of duty was because he was too drunk to shoot straight.

R. at 207-08 (internal quotation marks omitted).  St. George did not contemporaneously object to these comments, and thus the CCA reviewed only for plain error and concluded the statements were fair commentary on the evidence, grounded in the facts, and within the

bounds of permissible oratorical embellishment.  In his § 2254 petition, St. George argued the prosecutor's statements denied him a fundamentally fair trial because they were inherently prejudicial and appealed to the passions and prejudices of the jury.  The district court denied the claim, concluding that the CCA's decision was not an unreasonable application of clearly established law.  The district court's decision is not subject to reasonable debate.

The district court correctly recognized that under the clearly established federal standard, courts ask "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).  Had we reviewed this claim for plain error, as the CCA did, we might well have reached a different conclusion than the CCA.  *See United States v. Kepler*, 74 F.4th 1292, 1316 (10th Cir. 2023) ("A prosecutor's comments are improper if they . . . invite the jury to base its decision on irrelevant considerations.").  But on habeas review, St. George was required to clear a higher bar:  "an unreasonable application constitutes more than an incorrect application of federal law."  *House*, 527 F.3d at 1019.  "The focus of the . . . inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . ."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  And "because the *Darden* standard is a very general one," the CCA had "more leeway" to reach the conclusion it did.  *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (internal quotation marks omitted).

Indeed, the district court recognized *Darden* itself concluded that more inflammatory comments than those here did not warrant habeas relief.  *See* 477 U.S. at 180

& n. 12 (referring to defendant as an "animal" that "shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash," and wishing a victim had "blown [his] face off" (internal quotation marks omitted)).  Although St. George argues that the prosecutor's comments were designed to compare his case to other police shootings in the media, he does not explain how the CCA unreasonably applied *Darden*.  Absent that explanation, he fails to show the district court's denial of relief is reasonably debatable.

III

Accordingly, we deny a COA and dismiss this matter.  St. George's motion to proceed without prepayment of costs and fees is granted.

Entered for the Court

Richard E.N. Federico
Circuit Judge